Case No. 21-1797. Keren Kayemeth Leisrael, Jewish National Fund et al., A Balance, v. Education for a Just Peace in the Middle East, doing business as U.S. Campaign for Religious Human Rights. Mr. Lewin for the A Balance, Mr. Maas for the FOE. Good morning, Mr. Lewin. You may proceed when you're ready. Thank you. May it please the court, this is an appeal from a dismissal by the district judge of a complaint under the Anti-Terrorism Act, three claims made on behalf of American citizens residing in southern Israel, and three common law claims made on behalf of Keren Kayemeth Leisrael, which is the fund that plants trees in southern Israel. And the district judge dismissed the complaint, all six claims, and the grounds that he stated for dismissal are clearly, in our view, reversible in light of this court's decision in the Atchley case, which certainly involved very gross violations of the Anti-Terrorism Act. And indeed, it appears to us that this is a case which follows a fortiori from the reversal in the Atchley case, because in Atchley, the defendants were pharmaceutical companies that were alleged to have participated in violations of the Anti-Terrorism Act, both direct and aiding and abetting provisions, but they were major pharmaceutical companies. In this case, the defendant is an American 501c3 entity, which takes contributions and which end up being tax deductible and sends them, sends the funds to entities that clearly are associated with foreign terrorist organizations like Hamas. May I ask you about that, Mr. Lewin? Yes. So, I understand your complaint to be alleging that, I'm calling it USCPR, donates money to the BNC, and that the BNC has a member, which is the PNIF, and the PNIF has members that are foreign terrorist organizations, including Hamas. And I'm wondering what your theory is as to BNC. USCPR gives money to BNC. Is your theory that BNC is an intermediary to terrorist organizations or that BNC itself is a front for Hamas? Well, we do say, and the evidence, of course, that will be available and we hope will be established in the way of discovery would be that BNC would itself be a front for Hamas. So, your theory is not an intermediary theory, like in ACHLI. Your theory is, well, in ACHLI, they decided it was a front for terrorists. Yes. It's not an intermediary like a bank, for example. But your theory is that BNC itself is a front for Hamas. And therefore, it's like ACHLI and BOIM. It's a direct contribution of funds to Hamas. By giving to BNC, they're giving money to Hamas. That's your theory? Yes, that is our theory. But the point is that, as we try to make in our brief, that these are matters that are very carefully concealed by those who are engaged in terrorist activities. Although we think it is a direct front for Hamas, it is a matter of discovery. We should certainly be entitled to proceed with the allegations of a complaint in order to determine precisely what BNC is and what it does. If you could just tell us then, what are your non-conclusory allegations in your complaint that would establish that BNC is a front for Hamas? Well, the non-conclusory allegations are the membership of BNC, what its activities are, what its goals are. We allege that its goals are the destruction of the state of Israel. But you also allege that it is an entity with a single objective, the realization of Palestinian rights, and that it is an organization that argues for freedom of expression, for the right to demonstrate. And so the relationship between that and the goal you ascribe is not clear. It's not necessarily on its face plausible. Well, in lots of ways, that's like the Holy Land Foundation and the Boehm case. When we made the allegation in the case that we brought against the Holy Land Foundation, the Holy Land Foundation claimed that it was also engaged in substantial charitable activity and not just in financing Hamas. Now, ultimately, we went to trial in that case. But the fact is that at the time the complaint was filed, the Holy Land Foundation, which was then a very generally accepted charity, was claiming that it was engaged in other activity beyond the violations of the Anti-Terrorism Act. And our point is that we should be able, on the basis of a complaint that has been filed in this case, and if one looks at the actually opinion and the very standards that the actually court laid out with regard to sufficient allegations under both direct liability and aiding and abetting liability under the Anti-Terrorism Act. That in this case, we have more than adequately met the standards in that case. Now, I see I'm into my rebuttal time. The other way to look at this is this is not actually because the allegations of proximate cause were much clearer there. It's more like Owen. And you just don't show the connections in your complaint in a way that we saw in actually. And it appears to be like what we were looking at in Owen, which was insufficient. Well, again, this this case cannot be compared to those in which the claim is made against substantial financial institutions, which engage in lots of other activity, which is not necessarily connected to the focus of what the terrorist organizations are designed to achieve. I see I'm into my rebuttal time, and I'd like to reserve that if with the court's permission. All right, we will grant you some rebuttal time and we'll hear now from Ms. Chamas. Morning. Good morning. If you wanted to bring it down just a couple of inches, if you look down, you can hear me. This is there's a button. Yes, this is a good height for me. If you can hear me. Okay. May, of course, my name is with the center for constitutional rights or at the U. S. campaign for Palestinian rights. The U. S. campaign for Palestinian rights also known as education for a just piece in the Middle East. The human rights organization that, according to plaintiff's own allegations, and as a court pointed out today engages in advocacy for Palestinian rights. To connect this advocacy to terrorism, plaintiffs have a series of attenuated connections, which they attempt to bolster with inflammatory, politically charged insinuation. Now, there's a, let us be clear about what their theory of liability here, and I'm repeating and characterization of their life allegations. It is proposing that the U. S. campaign and being the U. S. fiscal sponsor of the boycott committee. Which is a coalition quote. 1 member of which is itself a coordinating framework of multiple political fashions. 1 of which is Hamas. They just provide no factual allegations that any support to the boycott committee via that fiscal sponsorship went beyond the boycott committee. In fact, there are no facts indicating that funds collected by the fiscal sponsorship even left the United States. Let us be clear. There are only 2 boycott committee is located. In Israel. So, if the campaign is collecting money for the boycott, the boycott committee, it's leaving the United States now. Well, your honor, actually, the complaints refers to a U. S. based representative of the boycott committee, and it doesn't refer to any movement of money or other resources across borders. And there are only 2 actions that that the U. S. campaign allegedly engaged with, and it bears really underscoring them. So, the 1st is a fiscal sponsorship, which we have discussed starting sometime in at least 2017. And the 2nd is that. The U. S. campaign tweeted and emailed its supporters in support of the rights of Palestinian marchers in Gaza, including condemning the killing of 14 Palestinian protesters during those marches during the 1st week of those marches. That's it. There are no other allegations about the fiscal sponsorship about what that entail. The only other allegations of support are allegations like, quote, working closely with the boycott committee and partnering with the boycott committee. And that's the complaint 128 and 130. There is nothing else your honor. There is a bit of a catch 22 for plaintiffs in situations where they don't have full access to the details of the relationships among the different entities and people. And so why isn't it at least a plausible inference from the complaint that, yes, the money was going overseas to the boycott. And if the boycott had significant representation by this other coalition, and they allege that Hamas had a. Had a leading role and a large voice in the boycott and in order to really pin that down. Wouldn't it be or why wouldn't it be appropriate to allow some discovery into the particulars? Thank you, your honor, and this gets to the question. Well, 1st of all, plaintiffs still need to meet the basic allegations and they have to provide some factual basis for their inclusory allegations. And the crux of the question is 1 that this court puts to Mr. Levine, which is what is your theory here of the relationship between the boycott national committee and these various other intermediaries? And let's be clear, there are here at least 2, not 3 intermediaries that are alleged. 1 is the boycott national committee. The other 1 is a and then the other 1 is mass. And each at each 1 of those, they don't allege requisite. Control or domination, or to use the Bernhardt language, the close intertwinement. Any of those theories are not really right here to be clear. The boycott committee is the coalition. The only allegations about what's the relationship between the boycott committee and the is that it is a member of that coalition membership is not control. Membership is not domination as it was of the minute of the body in the ministry. And similarly, if you look at then the next degree of separation, the is itself alleged to be a coalition and just just to be devil's advocate on this. If Hamas is the controlling power in Gaza, and the boycott is standing up for the rights of people in Gaza, Palestinians to demonstrate and to and to speak and to have civil rights. Civil liberties, why isn't it a fair inference that they and or their proxies would have an outsized role in the boycott? The stated objective of which is to boycott Israel or what it sees as failure to respect. The rights of the Palestinian people in Gaza. Ron is simply there are no allegations in this complaint. Actual allegations are supporting the factual allegations to support that inference. There is no allegations that there's a connection between Hamas and the boycott national committee. The only allegation connecting the boycott national committee is to the and that is membership in a coalition. And then with regards to the allegation of Hamas to the theory that presented by plaintiffs that because Hamas controls Gaza, anything that happens in Gaza is somehow attributable to Hamas. So, even if the score were in for some kind of connection between the boycott national committee and something occurring in Gaza, that theory has no basis in law. They just rely heavily on the boy in seven circuit decision. And even in that decision, the court clearly found that support to a hospital in Gaza is not alleged to be connected to Hamas is not amounted to support to Hamas. Again, here this quarter. Offers a lot of guidance and it's actually decision about the kinds of allegations that there showed domination and control of the ministry. By money, which were the ones which was a group there that was involved responsible for plaintiff's injuries. They allege 70,000 employees of the ministry were members of. They showed that the ministry, the allegations that this court pointed to, and that the ministry was fully controlled by. If you walk through the halls of the ministry, you would have seen posters of you would have seen fighters walking the halls. It was dual purpose. The hospitals were used by. I was just going to ask you, because two of the two members of this panel were on that case. And we're well familiar with the facts of that case. But I just wanted to press you on what is and isn't pleaded in your view. And in particular, I take it that it's adequately pleaded that the campaign was aware that the great return marches were sometimes used as sort of the, the launching place for the incendiary symbol. So it was awareness of. I don't believe so, your honor. The only tweet referencing kites and balloons is, I believe, on reference and reproducing paragraph 134 of the complaint. And that references kites and balloons from Gaza, not even from the great return march. But in any case, in any event, the U.S. campaigns tweets about the great return march only indicates support for protesters demands of human rights and criticism of Israeli use of lethal force against unarmed protesters. And those are their words. Your honor, just to underscore, and I see I have a minute left here to the points on the speech that is alleged to the plaintiff's allegations here about our client's speech. It makes it clear that this case is about punishing the U.S. campaign for its advocacy in support of Palestinian rights and boycott, which the complaint repeatedly equates in conclusion terms with terrorism. There is no factual support for that egregious and extreme allegation. Plaintiffs make their hostility towards the U.S. campaign's advocacy clear, and that is not enough to grant them. That is not enough to state a claim and not enough to proceed with their harassing litigation against the U.S. campaign. Your honor, further questions? Thank you. Thank you. And we'll hear again from Mr. Lewin, who had reserved, sought to reserve time for rebuttal. Yes, your honor. Give you one minute for rebuttal, Mr. Lewin. The complaints allegations very specifically describe how the incendiary balloons, which are a terrorist mechanism that has affected. American citizens, three American citizen families were not only supported, but really part of Camas's great return marches that were celebrated for the release of those incendiary balloons. And we think the complaint has adequate allegations of not only the direct liability under the Anti-Terrorist Act, but certainly under the standards of actually for the aiding and abetting provisions under JASTA. And consequently, we believe that the decision below should be reversed in light of actually. Thank you. Mr. Lewin, for your direct liability claim, there has to be. That the defendant proximately cause an active international terrorism, and I take it that the active international terrorism that you allege is. Twenty three thirty one one violent acts or acts dangerous to human life. That's correct. That's correct. The incendiary balloons, according to the allegations of the complaint, have threatened the lives and certainly cause great mental anguish to three separate American citizen families living in southern Israel. And consequently, our basis for liability under the direct liability provisions of the Anti-Terrorism Act. And the material it's material support to terrorists, or is it material support or resources to designated foreign terrorist organizations? I take it it has to be material support to terrorists because the campaign, the boycott is not a designated foreign terrorist organization. No, it's material support for terrorism because the American tax laws. I mean, the the astounding thing about this is that contributors who give funds for this to the defendant are able to take tax deductions under five. I understand that context. So the question about the for the direct liability, if it's under twenty three thirty nine, a. Little a. Then there are criminal penalties for if the supported her as a terrorist. Physical violence with the intent to cause serious bodily injury to a national of the United States. Does that mean that for proximate cause, it has to be foreseeable not only that there's bodily injury to persons, but that the persons injured are it is a national of the United States. How do we address that? I think I think that under the facts of this case, it would be foreseeable that there would be injury to nationals of the United States because it is, I think, well known. And we can certainly establish at a trial that there are American known to be American citizen families living in the area to which the incendiary balloons are released. And consequently, those are not only harmful to Karen Kiemeth and to the forests in southern Israel, but also have a direct impact on American citizens residing in southern Israel. Thank you, Mr. Lewin. The case is submitted.
judges: Pillard, Pan, Edwards